

JUDGE NATHAN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OLGA ARROYO,

                    Plaintiff,

v.

JPMORGAN CHASE BANK, N.A.; CHASE
AUTO FINANCE CORP.; BRONX FORD
LINCOLN MERCURY D/B/A CITY WORLD
FORD; JOHN DOES 1-10,

                    Defendants.

Civil Action No.

ECF CASE

COMPLAINT AND JURY
DEMAND



MAY 0 5 2015

U.S.D.C. S.D.N.Y.

Plaintiff OLGA ARROYO hereby alleges, upon personal knowledge as to herself and upon information and belief as to other matters:

## PRELIMINARY STATEMENT

1.      This civil action is brought by Plaintiff Olga Arroyo against Defendants JPMorgan Chase Bank and Chase Auto Finance Corp. (hereinafter referred to collectively as "Defendant Chase"), and City World Ford for fraudulent and deceptive practices and the violation of numerous state and federal consumer protection statutes, including the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.*, the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.*, the Credit Repair Organizations Act (CROA), 15 U.S.C. § 1679 *et seq.*, the New York General Business Law (GBL) § 349, and state common law. Defendants unlawfully deceived Ms. Arroyo into purchasing a car that she does not want and cannot afford because the payments are more than half of her monthly Social Security income. Defendant City World Ford blatantly falsified information on Ms. Arroyo's credit application by misstating her income, and then sold her Retail

1

Instalment Contract to Defendant Chase. Defendant Chase failed to underwrite Ms.

Arroyo's credit application and purchased the contract despite the fact that the credit

application prepared by City World Ford was obviously suspect on its face. As a result of

their actions, Defendants reaped substantial profits for themselves and caused significant

harm to Ms. Arroyo.

2.      Plaintiff seeks damages, along with injunctive relief, costs, and attorney's

fees.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over Plaintiff's claims pursuant to 15 U.S.C. §§

1681n, 1681o, 1640, 1641, and 1679(g) and 28 U.S.C. § 1331. Declaratory relief is

available pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has supplemental

jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a

substantial part of the events giving rise to Plaintiff's claims occurred in this district.

## PARTIES

5.      Plaintiff Olga Arroyo is a Manhattan resident who has serious health

problems and is permanently disabled and on Social Security and other government

benefits. Plaintiff Arroyo is a "consumer" as defined by the Truth in Lending Act, the

Fair Credit Reporting Act, and the Credit Repair Organizations Act.

6.      Defendant JPMorgan Chase Bank, N.A. is a national bank whose principal

place of business is located at 1111 Polaris Parkway, Columbus, Ohio 43240. Defendant

JPMorgan Chase Bank is the parent company of Defendant Chase Auto Finance Corp.

Defendant JPMorgan Chase Bank does business in this district.

Last Saved: 5/5/2015 3:55 PM

7.      Defendant Chase Auto Finance Corp. is a Delaware corporation.
Defendant Chase Auto Finance Corp. is a subsidiary of Defendant JPMorgan Chase
Bank. The registered agent for Defendant Chase Auto Finance Corp. is The Corporation
Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware
19801. Defendant Chase Auto Finance Corp. does business in this district.

8.      Defendants JPMorgan Chase Bank and Chase Auto Finance Corp. are
referred to collectively as "Defendant Chase."

9.      Defendant Bronx Ford Lincoln Mercury d/b/a City World Ford
("Defendant City World Ford") is a New York corporation located at 3305 Boston Road,
Bronx, NY 10469. Defendant City World Ford regularly extends consumer credit that is
payable by agreement in more than four installments, is the "person" to whom Ms.
Arroyo's debt was originally payable on the face of her loan agreement, and is a
"creditor" as defined by the Truth in Lending Act, 15 U.S.C. § 1602(g).

10.     Defendants John Does 1-10 are persons associated with Defendant City
World Ford who were involved in the violations of law alleged in this Complaint.

11.     Defendant City World Ford and Defendants John Does 1-10 are referred
to collectively as the "City World Ford Defendants."

## FACTUAL ALLEGATIONS

### I.   The Purchase

12.     Plaintiff Olga Arroyo is a Manhattan resident with multiple disabilities,
including chronic obstructive pulmonary disease and heart problems, who relies on Social
Security, food stamps, Medicaid, and a Section 8 rental subsidy as her only income.

Last Saved: 5/5/2015 3:55 PM

13.     In or about July 2014, Ms. Arroyo's son, Edwin Arroyo, advised her that he and his girlfriend wished to purchase a car. He asked Ms. Arroyo whether she would be willing to cosign on a car loan with him if necessary.

14.     Ms. Arroyo, who had excellent credit, agreed to cosign for her son.

15.     On or about July 30, 2014, Ms. Arroyo accompanied her son and his girlfriend, Milady Emiliano, to Defendant City World Ford, an auto dealership in the Bronx.

16.     None of the three had ever purchased a car from an auto dealer before.

17.     Leticia Glenn, a saleswoman, greeted them.

18.     Mr. Arroyo told Ms. Glenn that he and his girlfriend were looking for a car and that his mother would cosign for him if necessary.

19.     Ms. Arroyo was using a walker and had an oxygen tank.

20.     A man who worked for the dealership approached Ms. Arroyo and her son and said that he needed to check their credit reports. He asked Ms. Arroyo for her driver's license, and she gave it to him. He then walked away to a desk with a computer and, upon information and belief, proceeded to access her credit report.

21.     Prior to accessing her credit report, the man did not ask Ms. Arroyo to sign any paperwork authorizing him to access her credit report.

22.     At the time Defendants accessed Ms. Arroyo's credit report, neither she nor her son had initiated the purchase of a specific vehicle.

23.     At the time Defendants accessed Ms. Arroyo's credit report, neither she nor her son had applied for credit from Defendants.

24.     Upon information and belief, Defendants' true purpose in accessing Ms. Arroyo's credit report prior to her even initiating a purchase of a specific vehicle or applying for credit from Defendants was to determine how expensive a vehicle they could steer her son to, and how much they could upcharge her.

25.     Soon thereafter, the man informed Ms. Arroyo that her credit was good, and that it was better than her son's.

26.     The man then directed Ms. Glenn to take Mr. Arroyo and Ms. Emiliano outside to look at cars in a parking lot across the street. Meanwhile, Ms. Arroyo waited inside at Ms. Glenn's desk.

27.     After some time, Mr. Arroyo, Ms. Emiliano, and Ms. Glenn returned to Ms. Glenn's desk and informed Ms. Arroyo that they had found the car they wanted to buy.

28.     Ms. Arroyo specifically stated to Ms. Glenn that she wished only to cosign, and did not agree to be the principal buyer. She informed Ms. Glenn that she received Section 8 and, as a result, was not allowed to own a vehicle.

29.     Ms. Glenn told Ms. Arroyo not to worry. She stated that she herself received Section 8 and had cosigned for several of her own family members.

30.     Two men from the dealership took Mr. Arroyo and Ms. Emiliano into a back office while Ms. Arroyo continued to wait at Ms. Glenn's desk.

31.     While in the back office, the two men told Mr. Arroyo and Ms. Emiliano that the car would cost approximately $830 per month. Upon information and belief, the two men asked Mr. Arroyo and Ms. Emiliano if they could afford the car payments, but did not ask to see any documentation of their income.

32.     Mr. Arroyo and Ms. Emiliano stated that they could afford the car payments.

33.     No one at the dealership asked Ms. Arroyo for information about her income.

34.     The two men, along with Mr. Arroyo and Ms. Emiliano, emerged from the back office and stated that Ms. Arroyo needed to sign some papers.  One of the men then presented Ms. Arroyo with a contract to buy the car.

35.     The contract was attached to a clipboard that was in the man's control. The man never gave Ms. Arroyo full possession of the contract. At all times, the man kept his hands on the contract.

36.     The contract is printed on extra-long paper that does not fit on a standard or even legal-sized clipboard. However, the papers were not hanging off the end of the clipboard when Ms. Arroyo signed them.

37.     Upon information and belief, the man at the dealership folded the contract when he placed it on the clipboard, thus obscuring and concealing the Truth in Lending disclosures from Ms. Arroyo.

38.     Ms. Arroyo attempted to sign her name on the "co-buyer" line, but one of the men directed her to sign on the "buyer" line instead.

39.     When Ms. Arroyo objected that she was the cosigner, the same man said, "Yes, we know you're the cosigner, but you have to sign here," pointing to the "buyer" line.

40.     Ms. Arroyo signed her name on the "buyer" line, but still believed that she was agreeing only to be the cosigner.

41.     After signing the contract, Ms. Arroyo signed other documents, including documents relating to insurance. However, she does not recall ever signing a credit application.

42.     Ms. Arroyo did not sign any documents prior to signing the contract.

43.     No one – not Ms. Arroyo, Mr. Arroyo, or Ms. Emiliano – put any money down towards the purchase of the automobile or insurance.

44.     After the documents were signed, one of the men informed Ms. Arroyo that she would be receiving a "gift" in the amount of $500. He described the gift to her as "free money for being a customer."

45.     Approximately one week later, Ms. Arroyo received the loan documents in the mail from Defendant Chase, and was extremely surprised to see that she was the only person listed as a buyer on the loan documents.

46.     It was at this point that Ms. Arroyo first realized that she had purchased the car as the sole and principal buyer.

47.     Ms. Arroyo was extremely shocked and upset when she realized that she had been deceived into purchasing a car.

48.     Ms. Arroyo contacted Chase on multiple occasions and complained that there was a mistake: she was supposed to be the cosigner, not the principal buyer. Chase told Ms. Arroyo that there was nothing Chase could do, and that she had to address her complaints to the dealer.

49.     Ms. Arroyo asked her son Edwin to correct the situation by obtaining documentation from the dealership confirming that she was the cosigner, not the buyer.

50.      Mr. Arroyo went back to the dealership. The manager, Fred Young, gave Mr. Arroyo a letter that states as follows: "To whom it may concern: the customer Olga Arroyo only co signed for her son, she isnt not [sic] obligated or expected to make payments on the car. The car will be paid through her son and not through Olga Arroyo. Any questions please call City World Ford."

51.      This document contains false statements, as Ms. Arroyo is in fact the sole purchaser of the vehicle, and is not a co-signer for her son.

## II. The Financing

52.      Ms. Arroyo's income consists of $374 per month in Social Security Disability benefits and $980 in Social Security Survivor's benefits, for a total of $1,354 in Social Security benefits per month.

53.      Defendant City World Ford entered into a "Retail Instalment Contract" with Ms. Arroyo in which it agreed to lend her more than $50,000 to finance the purchase of a car.

54.      Under the contract, the car payments are $831 per month, more than half Ms. Arroyo's monthly income. The monthly payments are completely unaffordable on Ms. Arroyo's income.

55.      After inducing Ms. Arroyo to enter into an unaffordable Retail Instalment Contract, the City World Ford Defendants then attempted to sell Ms. Arroyo's contract to various lenders, including Defendant Chase.

56.      The credit application electronically submitted by the City World Ford Defendants to the lenders on Ms. Arroyo's behalf falsely stated that Ms. Arroyo had an annual income of $90,000 per year, or $7,500 per month.

8

57.     Ms. Arroyo did not in any way participate in the City World Ford Defendants' submission of false credit information, including false income information, on her behalf.

58.     Defendant Chase is one of the largest auto lenders in the nation. According to its most recent annual report, Defendant Chase made auto loans worth $52.8 billion in 2013, up from $49.9 billion in 2012.

59.     Defendant Chase has an automatic underwriting system under which certain credit applications can be approved "by the system" without any manual underwriting. In these cases, no human being looks at the credit application.

60.     Ms. Arroyo's credit application was automatically approved without a manual credit review.

61.     The credit application submitted to Defendant Chase by the City World Ford Defendants was obviously suspect on its face.

62.     For example, the credit application states that Ms. Arroyo earns $90,000 per year as a "Manager"; however, the employer name is indicated only as "Retired" and the "Home Phone" and "Work Phone" numbers are identical.

63.     In another part of the form, which asks the applicant to characterize his or her "Employment Type" as "Employed," "Unemployed," "Self-employed," "Military," "Retired," "Student," or "Other," the box "Other" is checked.

64.     The other lenders either did not agree to purchase Ms. Arroyo's Retail Instalment Contract or agreed to do so only with qualifications.

65.     Upon information and belief, Defendant Chase was the only lender to unconditionally purchase Ms. Arroyo's Retail Instalment Contract.

66.     Ms. Arroyo was not unknown to Defendant Chase as a customer. Ms. Arroyo has a Chase checking account into which her Social Security benefits are directly deposited each month. No other income is deposited into that account.

67.     Defendant Chase had also previously issued a credit card to Ms. Arroyo with a credit limit of only $1,700.

68.     Each month, Ms. Arroyo receives a single statement from Chase that contains information about her bank account and her auto loan.

69.     Had Defendant Chase compared the information in Ms. Arroyo's credit application to the information in its own system, it would have realized that Ms. Arroyo's credit application could not possibly have contained accurate information.

70.     Defendant City World Ford has been rated "F" by the Better Business Bureau and has been subject to enforcement action by regulators.

71.     Defendant Chase knew or should have known of Defendant City World Ford's negative history, and therefore should not have allowed its computer systems to automatically approve the purchase of Retail Instalment Contracts from Defendant City World Ford.

72.     On multiple occasions, Ms. Arroyo contacted Chase to complain about the fraudulent and deceptive practices used by the City World Ford Defendants to induce her to purchase an expensive automobile that she did not intend to purchase, cannot afford, and does not want. However, Chase refused to help Ms. Arroyo.

73.     Ms. Arroyo's Retail Instalment Contract states:

> Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods and services obtained pursuant hereto or with the proceeds hereof. Recovery

10

hereunder by the debtor shall not exceed amounts paid by the debtor hereunder.

74.     Further, Chase is liable to Ms. Arroyo for all of the claims and defenses she could bring against the City World Defendants up to "the amount owing" to Chase pursuant to N.Y. Pers. Prop. Law § 302(9).

75.     The Truth in Lending disclosures that the City World Ford Defendants provided to Ms. Arroyo contain material inaccuracies.

76.     Included in the $50,989.56 amount financed was a fee for a "service contract" in the amount of $3,995.

77.     Upon information and belief, Ms. Arroyo could have purchased an identical service contract directly from Ford, the car manufacturer, for approximately $1,000.

78.     Upon information and belief, the City World Ford Defendants would not have charged $3,995 for the service contract in a comparable cash transaction.

79.     Upon information and belief, the $3,995 fee for the service contract conceals a significant dealer upcharge and kickback, which was not disclosed to Ms. Arroyo.

80.     The City World Ford Defendants paid $620.40 to Progressive Insurance Co. to cover part of Ms. Arroyo's insurance premiums. This payment is not listed on Ms. Arroyo's TILA disclosure form.

81.     The Retail Instalment Contract lists a "rebate" of $1,500.  Upon information and belief, Ms. Arroyo did not actually receive the benefit of this "rebate."

82.

11

83.     The City World Ford Defendants also mailed Ms. Arroyo a check in the amount of $500. This payment is not listed on Ms. Arroyo's TILA disclosure form.

84.     Furthermore, upon information and belief, the actual sale price of the car – $43,964.64 before taxes – exceeded the fair market value of the car by approximately $7,000-$10,000.

85.     In short, Defendants put Ms. Arroyo into a $61,000 contract to purchase a car for $44,000, when that car was worth only $34,000.

86.     Defendants' actions have also caused Ms. Arroyo suffering and emotional distress.

87.     Ms. Arroyo constantly worries that she will lose her housing, health insurance and home health aide because she is now the unwitting owner of an expensive automobile. Ms. Arroyo relies on federal Section 8 benefits to pay her rent and Medicaid to pay for health care and her home health aide, and those programs do not permit recipients to have significant assets.

88.     As a result of the stress of this incident, Ms. Arroyo was upset, agitated and unable to sleep. Even today, months after this incident, Ms. Arroyo has nightmares and difficulty sleeping at night.

89.     Ms. Arroyo's relationship with her son Edwin has also suffered because of this incident.

## FIRST CLAIM FOR RELIEF
(Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* – Against All Defendants)

90.     Plaintiff repeats, re-alleges, and incorporates by reference all foregoing paragraphs.

Last Saved: 5/5/2015 3:55 PM

91.     The Fair Credit Reporting Act, 15 U.S.C. § 1681b, provides that a person may request and a consumer reporting agency may furnish a consumer report only for certain enumerated purposes, and no others.

92.     It is a violation of the Fair Credit Reporting Act for an auto dealer to access a person's credit report without written permission unless the person has actually initiated the purchase of a specific automobile. *See* Federal Trade Commission, *40 Years of Experience with the Fair Credit Reporting Act: An FTC Staff Report with Summary of Interpretations* (July 2011), at 14, 45, and 48, available at *https://www.ftc.gov/reports/40-years-experience-fair-credit-reporting-act-ftc-staff-report-summary-interpretations*.

93.     As stated above, at the time the City World Ford Defendants accessed Ms. Arroyo's credit report, neither she nor her son had initiated the purchase of a specific vehicle.

94.     As stated above, the City World Ford Defendants also had not obtained Ms. Arroyo's written permission to access her credit report prior to their doing so.

95.     The City World Ford Defendants accessed Ms. Arroyo's credit report without having written permission or a permissible purpose to do so, in violation of 15 U.S.C. §§ 1681b and 1681n.

96.     The City World Ford Defendants falsely certified to multiple credit reporting agencies that it had a permissible purpose to access Ms. Arroyo's credit report, when in fact it did not, in violation of 15 U.S.C. § 1681b(f).

97.     The City World Ford Defendants committed such violations willfully, or, in the alternative, negligently.

13

98.     Defendant Chase is liable for these violations pursuant to the Retail

Instalment Contract, the FTC Holder Rule, and N.Y. Pers. Prop. Law § 302(9).

99.     As a direct and proximate result of Defendants' violations of the Fair

Credit Reporting Act, Plaintiff has sustained actual damages in an amount to be proved at

trial and is also entitled to statutory damages, punitive damages, costs, and attorney's

fees.

**SECOND CLAIM FOR RELIEF**
(Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* – Against City World Ford Defendants)

100.    Plaintiff repeats, re-alleges, and incorporates by reference all foregoing

paragraphs.

101.    Prior to the consummation of the contract, the City World Ford

Defendants failed to provide Ms. Arroyo with TILA disclosures in a form that she could

keep, in violation of 15 U.S.C. § 1638(b) and Regulation Z § 1026.17(b).

102.    The City World Ford Defendants charged Ms. Arroyo $3,995 for a service

contract, an amount that they would not have charged in a comparable cash transaction.

103.    Upon information and belief, the City World Ford Defendants upcharged

Ms. Arroyo for the service contract incident to the extension of credit, and thus the

amount of the upcharge should have been included as part of the finance charge, not as

part of the amount financed.

104.    The City World Ford Defendants failed to include the upcharge on the

$3,995 service contract in the finance charge, and instead included it as part of the

amount financed.

105.   Therefore, the City World Ford Defendants incorrectly disclosed the finance charge and annual percentage rate to Ms. Arroyo, in violation of 15 U.S.C. §§ 1638(a)(3) and (4) and Regulation Z §§ 1026.18(d) and (e).

106.   TILA and Regulation Z require that when a creditor itemizes the amount financed, it must list all payments made directly to the consumer and all payments made to third parties on behalf of the consumer. 15 U.S.C. § 1638(a)(2)(B); 12 C.F.R. § 1026.18(c).

107.   The City World Ford Defendants failed to list in the itemization of the amount financed the payments made directly to Ms. Arroyo or to Progressive Insurance Co.

108.   Therefore, the City World Ford Defendants provided an inaccurate itemization of the amount financed to Ms. Arroyo, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. § 1026.18(c).

109.   In addition, the City World Ford Defendants listed a $1,500 "rebate" in the TILA disclosures.  Upon information and belief, Ms. Arroyo did not actually receive the benefit of this rebate, and the TILA disclosures are inaccurate.

110.   As a direct and proximate result of the City World Ford Defendants' violations of the Truth in Lending Act and Regulation Z, Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to statutory damages, costs, and attorney's fees.

### THIRD CLAIM FOR RELIEF
(Credit Repair Organizations Act, 15 U.S.C. § 1679 *et seq.* – Against All Defendants)

111.   Plaintiff repeats, re-alleges, and incorporates by reference all preceding paragraphs.

112.    The Credit Repair Organizations Act states that "no person" may make any false or misleading statements concerning a person's credit worthiness, credit standing or credit capacity to a person's potential creditors. 15 U.S.C. § 1679b.

113.    The City World Ford Defendants made false and misleading statements concerning Ms. Arroyo's creditworthiness, credit standing or credit capacity to her potential creditors, including Defendant Chase, in violation of 15 U.S.C. § 1679.

114.    Defendant Chase is liable for these violations pursuant to the Retail Instalment Contract, the FTC Holder Rule, and N.Y. Pers. Prop. Law § 302(9).

115.    As a direct and proximate result of Defendants' violations of the Credit Repair Organizations Act, Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to punitive damages, costs, and attorney's fees.

## FOURTH CLAIM FOR RELIEF
(N.Y. Gen. Bus. Law § 349 – Against All Defendants)

116.    Plaintiff repeats, re-alleges, and incorporates by reference all foregoing paragraphs.

117.    New York prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. Gen. Bus. Law § 349(a).

118.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h).

119.    Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their business.

16

120.   Defendants' violations include, but are not limited to:

a.  Creating and submitting a credit application that falsely stated that Ms. Arroyo earned $90,000 per year as a "Manager," when in fact she relies on Social Security, Medicaid, Food Stamps and Section 8 as her only income;

b.  Putting Ms. Arroyo into an unaffordable loan;

c.  Automatically approving Ms. Arroyo for an unaffordable loan financed by a dealer known to have violated consumer protection laws;

d.  Continuing to enforce the contract despite Ms. Arroyo's complaints about the dealer's unfair and deceptive practices;

e.  Selling Ms. Arroyo a vehicle for a price that exceeded the fair market value by $7,000-$10,000;

f.  Selling Ms. Arroyo a service contract without her knowledge and at a price that exceeded fair market value by approximately $3,000;

g.  Falsely certifying to the credit reporting agencies that they had a permissible purpose to access her credit report, when they did not;

h.  Preparing a false Truth in Lending Statement that did not accurately reflect payments to third parties, payments to Ms. Arroyo, and dealer kickbacks;

i.  Telling Ms. Arroyo that she was a cosigner, when she was in fact the sole buyer of the automobile;

j.  Giving Ms. Arroyo a letter stating that she was a cosigner, when she was in fact the sole buyer of the automobile.

Last Saved: 5/5/2015 3:55 PM

121.    Defendants' conduct has a broad impact on consumers at large.

122.    Upon information and belief, Defendants' conduct is directed toward consumers at large.

123.    Upon information and belief, Defendants have engaged in a pattern and practice of similar behavior against other New Yorkers.

124.    Defendant Chase is additionally liable for these violations pursuant to the Retail Instalment Contract, the FTC holder rule, N.Y. Pers. Prop. Law § 302(9), and via ratification for continuing to demand payment on the underlying debt once being placed on notice of the fraud.

125.    As a direct and proximate result of Defendants' violations of GBL § 349, Plaintiff has sustained actual damages in an amount to be proved at trial and is also entitled to treble damages, injunctive relief, costs, and attorney's fees.

### FIFTH CLAIM FOR RELIEF
(Fraud – Against All Defendants)

126.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

127.    The City World Ford Defendants made numerous false statements to Plaintiff in order to deceive her into purchasing a car that she did not intend to purchase, cannot afford, and does not want.

128.    The City World Ford Defendants made these false statements knowingly.

129.    Defendant Chase is liable for these violations pursuant to the Retail Instalment Contract, the FTC Holder Rule, N.Y. Pers. Prop. Law § 302(9), and via ratification for continuing to demand payment on the underlying debt once being placed on notice of the fraud.

130.    As a result of Defendants' false statements, Ms. Arroyo suffered actual damages, including emotional distress and pecuniary harm.

131.    As a result, Plaintiff is entitled to actual and punitive damages. Plaintiff is also entitled to void the Retail Instalment Contract and financing agreement.

## SIXTH CLAIM FOR RELIEF
### (Negligence – Against Defendant Chase)

132.    Plaintiff repeats, re-alleges, and incorporates by reference the foregoing paragraphs.

133.    Defendant Chase owed Ms. Arroyo a duty of ordinary care.

134.    Defendant Chase breached this duty by failing to underwrite Ms. Arroyo's credit application and allowing her loan to be automatically approved.

135.    Defendant Chase also breached this duty when Ms. Arroyo complained about the unfair and deceptive practices used by the City World Ford Defendants and Defendant Chase chose to ratify and endorse those practices and hold Ms. Arroyo to the terms of the Retail Instalment Contract.

136.    As a direct and proximate result of Defendant Chase's breach of this duty, Ms. Arroyo suffered compensable harm, including actual damages and emotional distress.

137.    Defendant Chase's conduct was so flagrant as to transcend mere carelessness and constitutes willful negligence or recklessness. Upon information and belief, Defendant Chase has engaged in a pattern and practice of similar behavior against other New Yorkers.

138.    As a result, Plaintiff is entitled to actual and punitive damages.

## SEVENTH CLAIM FOR RELIEF

Last Saved: 5/5/2015 3:55 PM

(Breach of Duty of Good Faith and Fair Dealing – Against Defendant Chase)

139.    Section 1-203 of the Uniform Commercial Code imposes an obligation of good faith in the performance of any contract.

140.    Section 4-103 of the Uniform Commercial Code further states that no bank may disclaim responsibility for its own lack of good faith or failure to exercise ordinary care in the performance of its obligations.

141.    Furthermore, New York law provides that all contracts contain an implied covenant of good faith and fair dealing in the course of performance.

142.    Defendant Chase breached this duty, and indeed acted in bad faith, by failing to underwrite Ms. Arroyo's credit application and allowing her loan to be automatically approved.

143.    In addition, Defendant Chase breached this duty, and acted in bad faith, when Ms. Arroyo complained about the unfair and deceptive practices used by the City World Ford Defendants and Defendant Chase chose to ratify and endorse those practices and hold Ms. Arroyo to the terms of the Retail Instalment Contract.

144.    As a result of Defendant Chase's breach of the duty of good faith and fair dealing, Plaintiff is entitled to damages in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.    Enter judgment for Plaintiff on all causes of action;

2.    Award actual, statutory, consequential, and punitive damages to Plaintiff;

3.    Void the Retail Instalment Contract and the financing agreement due to fraud in the inducement;

20

4.      Enter an injunction requiring the City World Ford Defendants to cease and desist from fraudulent and deceptive practices and to comply with the Fair Credit Reporting Act, the Truth in Lending Act, and the Credit Repair Organizations Act.

5.      Enter an injunction requiring Defendant Chase to reform its underwriting procedures so as to avoid purchasing fraudulently obtained Retail Instalment Contracts;

6.      Award reasonable attorney's fees and costs to Plaintiff; and,

7.      Award such other and further relief as may be just and proper.

**JURY TRIAL DEMANDED.**

Dated: May __, 2015
        New York, NY

                                        Respectfully submitted,

                                        _____
                                        Claudia Wilner
                                        Susan Shin
                                        Josh Zinner
                                        NEW ECONOMY PROJECT
                                        121 West 27th Street, Suite 804
                                        New York, NY 10001
                                        212-680-5100

                                        _____
                                        Ahmad Keshavarz
                                        THE   LAW   OFFICES   OF   AHMAD
                                        KESHAVARZ
                                        16 Court St., 26th Floor
                                        Brooklyn, NY 11241-102
                                        Phone: (718) 522-7900
                                        Fax:    (877) 496-7809 (toll-free)
                                        ahmad@NewYorkConsumerAttorney.com

                                        ATTORNEYS FOR PLAINTIFF

21